IN THE UNITE STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLANIA

| | | |
|---|---|---|
| MICHELLE CANDACE CRAWFORD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of Social Security | : | NO. 19-5156 |

O P I N I O N

JACOB P. HART                                    DATE:  6/26/20
UNITED STATES MAGISTRATE JUDGE

Michelle Candace Crawford brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI").  She has filed a Request for Review to which the Commissioner has responded.  As set forth below, Crawford's Request for Review will be granted in part and the matter remanded to the Commissioner for a determination as to whether work exists which she could perform requiring only occasional reaching in any direction with her left arm.

I.      Factual and Procedural Background

Crawford was born on March 21, 1974.  Record 147.  She completed the eighth grade in school.  Record at 42.  She has worked in the food service industry in a dormitory cafeteria.  Record at 192-3.  On July 25, 2016, she filed an application for SSI, alleging disability as a result of stage III breast cancer, degenerative disc disease, sciatica, and depression.  Record at 147, 181.

Crawford's application was denied on April 25, 2017.  Record at 66.  She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ").  Record at 88.  A hearing was held in this case on July 27, 2018.  Record at 34.  On October 26, 2018, however, the ALJ issued

a written decision denying benefits.  Record at 12.  The Appeals Council denied Crawford's

request for review, permitting the ALJ's decision to stand as the final decision of the

Commissioner.  Record at 1.  Crawford then filed this action.

II.    Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's

decision is supported by substantial evidence.  42 U.S.C. §405(g); Richardson v. Perales, 402

U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753

F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as

adequate to support a decision.  Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d

775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart

from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied

the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically

determinable basis for an impairment that prevents him from engaging in any 'substantial gainful

activity' for a statutory twelve-month period."  42 U.S.C. §423(d)(1).  As explained in the

following agency regulation, each case is evaluated by the Commissioner according to a five-

step process:

> (i) At the first step, we consider your work activity, if any.  If you are doing substantial
> gainful activity, we will find that you are not disabled.  (ii) At the second step, we
> consider the medical severity of your impairment(s).  If you do not have a severe
> medically determinable physical or mental impairment that meets the duration
> requirement in §404.1590, or a combination of impairments that is severe and meets the
> duration requirement, we will find that you are not disabled.  (iii)  At the third step, we
> also consider the medical severity of your impairment(s).  If you have an impairment(s
> that meets or equals one of our listings in appendix 1 of this subpart and meets the
> duration requirement, we will find that you are disabled.  (iv).  At the fourth step, we
> consider our assessment of your residual functional capacity and your past relevant work.
> If you can still do your past relevant work, we will find that you are not disabled.  (v).  At
> the fifth and last step, we consider our assessment of your residual functional capacity

and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Crawford's Request for Review

In his decision, the ALJ determined that Crawford suffered from the severe impairments of status post-breast cancer, degenerative disc disease, left upper extremity lymphedema, an anxiety disorder, and a depressive disorder. Record at 17. He decided that no impairment or combination of impairments met or medically equaled a listed impairment. Id.

The ALJ found that Crawford retained the ability to perform sedentary work, except that she could not reach overhead with her left upper extremity, and she was limited to simple, routine, and repetitive tasks, in an environment with few workplace changes. Record at 19. She could not perform production rate or assembly line work, and could have no interaction with the general public. Id.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ decided that Crawford could work as a clerical addresser, table worker, or stuffer. Record at 28. He concluded, therefore, that she was not disabled. Id.

In her Request for Review, Crawford maintains that the ALJ improperly weighed the medical opinion evidence, ignoring the "treating physician rule" which applied to her case as it was filed prior to March 27, 2017. She also argues that the ALJ wrongly substituted his own lay opinions for those of the experts, without support in the medical record.

IV.     Discussion

A.      Crawford's Physical Impairments

As above, the ALJ acknowledged that Crawford suffered from the sequelae of her mastectomy, lymphedema of the left arm (following the removal of her axillary lymph nodes as part of her cancer surgery), and degenerative disc disease.  Record at 17, 649.  He accommodated Crawford's claim of back pain to a great extent by finding she could only engage in a limited range of sedentary work.  Record at 19.

The ALJ also accommodated Crawford's lymphedema by including in his RFC assessment a limitation to work requiring no overhead lifting with the left arm.  Record at 19.  At the hearing, the vocational expert testified that the jobs identified by the ALJ in his decision as suitable for Crawford did not require overhead lifting.  Record at 59, 60, 62.  Nevertheless, all three jobs required frequent bilateral reaching in directions other than overhead.  Record at 62.

As Crawford has pointed out, however, the consultative examining physician, Andrea Woll, D.O., opined on March 1, 2017, that Crawford could only occasionally reach in any direction with her left arm.  Record at 634.  Crawford argues that the ALJ had no medical basis for disagreeing with this finding.

Agency reviewing physician Josie Munkenberg, MD, indicated in an April 25, 2017, report that Crawford was limited only with respect to "left overhead" manipulative ability. Record at 67.  However, Crawford argues that there was no record evidence which would have permitted Dr. Munkenberg, who never examined Crawford, to differ from Dr. Woll in this respect.  It may be relevant that Dr. Munkenberg's form was not one where she was presented with a checklist which asked her to opine on reaching in other directions.

Crawford's counsel elicited testimony that, on the day of the hearing, her left arm was swollen down to the hand.  Record at 49.  Crawford testified that this was not an unusual degree of swelling, and that her arm swelled every day, with the swelling receding, but then returning. Record at 46-7, 49.  She testified that she did not use her left arm for that reason, and could not use a walker because it required the use of both arms to push.  Record at 49, 51.

Dr. Woll did not observe swelling in Crawford's left arm on the day of her examination. Record at 627.  However, she noted that abduction of the left shoulder was painful, and that strength in the left arm was slightly reduced to 4/5.  Record at 630.

Further, between April 15 and 17, 2018, a year after Dr. Woll examined Crawford, and after Dr. Munkenberg issued her opinion, Crawford was admitted for two nights to Pennsylvania Hospital for cellulitis in her left arm.  Record at 801.  Cellulitis, a bacterial skin infection, is frequently a complication of lymphedema.  Http://mayoclinic.org/diseases-conditions/lymphedema/symptoms-cause (Last visited June 22, 2020).  Upon admission, Crawford was feverish and her left arm was swollen.  Record at 793.  She stated that her left arm had been swollen for months, but that it had appeared "more painful, warm and erythematous [i.e., red]" that day, which led her to seek emergency treatment.  Id.  Her arm swelling was described in the records as "acute on chronic."  Record at 795.  She was treated in the hospital with antibiotics, and discharged with more antibiotics.  Record at 803.

The ALJ wrote that Crawford's representations about the limitations caused by her lymphedema were not consistent with the record:

> The claimant has testified to pain and swelling in her left upper extremity that would limit her ability to perform any work activity.  However, the record shows that the claimant has not sought significant treatment for this condition, and was discharged [from] physical therapy which was prescribed to address this impairment.  The claimant's failure to … regularly attend physical therapy is inconsistent with her allegation of pain severe enough to be disabling, as it would be expected that a person in such a degree of

> pain would adhere to a treatment schedule.  This is most especially the case since the claimant has testified that her doctor told her that her lymphedema would improve with physical therapy, which, ostensibly, would greatly increase the likelihood of the claimant's adherence to a treatment schedule for an impairment she alleges is disabling.

Record at 24.

Indeed, Crawford was dismissed from physical therapy on July 8, 2016, after failing to attend any session after her evaluation.  Record at 290-292.  It is also true that Crawford testified that her doctor had told her that physical therapy would help improve her lymphedema, and that she "just [had] to restart going."  Record at 56.  Nevertheless, even if Crawford was exaggerating when she claimed to endure so much pain in her body "that I just can't do anything", (Record at 48), the medical evidence still raises a legitimate question as to whether she could frequently reach with her left arm for eight hours per day.

Again, I emphasize that Dr. Woll was the only physician to have examined Crawford and opined on the matter.  She concluded that reaching in any direction with the left arm should have been limited to "occasional."  Dr. Munkenberg's report was based only on a review of the records, and the Commissioner has not pointed to other medical evidence upon which she could have relied in differing from Dr. Woll on Crawford's ability to reach.  Also notable is Crawford's April 15, 2018, statement that her arm had been swollen for months; it seems unlikely that she was calculating her words to support her Social Security claim at the moment she presented for emergency treatment of her clinically documented cellulitis.

Accordingly, I will direct this matter to be remanded to the agency.  Upon remand evidence should be obtained from a vocational expert to determine whether jobs exist which Crawford could have performed with the same RFC assessment as previously, except that her left (non-dominant) arm would be limited to occasional reaching in any direction.

B.   Crawford's Mental Impairments

Crawford obtained treatment from the Wedge Medical Center beginning in 2015.  Record at 1370.  Her treating psychiatrist, Lloyd Alcera, MD, and therapist, Susan Krisch, MD, submitted reports which they both signed, dated June 26, 2018.  Record at 1370-1382.  In them, they indicated that Crawford met listed impairment 12.04, which pertains to depression; and 12.06, which pertains to anxiety.  Record at 1371, 1372.

They also opined that Crawford had extreme or marked impairment in 42 out of 44 areas listed, with the exception of the ability to maintain hygiene and personal attire, and the ability to maintain socially appropriate standards of neatness and cleanliness, where she was only moderately limited.  Record at 1378-1382.  Therefore, even if Crawford was not found to meet a listing, she would be found disabled at the fifth stage of the sequential analysis if these reports were fully credited.

The ALJ, however, gave these reports "little weight."  Record at 26.  He explained that he found them inconsistent with the record.  Id.  At the same time, the ALJ also rejected the opinion of agency reviewing expert Roger Fretz, Ph.D., who concluded that Crawford's mental health impairments were not severe.  Record at 25-6, 71.  The ALJ concluded that Crawford was moderately limited in understanding, remembering and applying information; interacting with others; concentration, persistence, and maintaining pace; and in adapting and maintaining herself.  Record at 18-19.  As above, he imposed a number of limitations in his RFC assessment which related to mental impairments.  Record at 19.

Crawford is incorrect in arguing that, having rejected Dr. Fretz's opinion, the ALJ was compelled to accept those of Dr. Alcera and Ms. Krisch.  It is the ALJ, and not the physicians, who makes the ultimate disability and RFC determinations.  Chandler v. Commissioner of Social

Security, 667 F.3d 356, 361 (3d Cir. 2011); and see Titterington v. Barnhart, 174 Fed. App'x 6, 11 (3d Cir. 2016) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC" because "surveying the medical evidence to craft an RFC is part of the ALJ's duties").

Further, the role of this court is limited to ensuring that the ALJ's decision was supported by substantial evidence.  42 USC §  405(g).  This court may not reweigh the evidence or substitute its own findings for the Commissioner's.  Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986); and see Davern v. Commissioner of Soc. Security, 660 Fed. Appx. 169, 173-4 (3d Cir. 2016).

The ALJ's analysis of the evidence regarding Crawford's mental health is not perfect. Some of the factors he looked to were distinctly unconvincing.  He cited the Function Report completed by Crawford in writing:  "The claimant rides the bus, which shows the ability to understand and remember routes and bus schedules and apply the information to get to the desired destination."  Record at 18.  Yet, on the same page of the Function Report, Crawford specified that she did not leave the house alone.  Record at 184.  Crawford may not have been responsible for the routes and bus schedules.

The ALJ also wrote that Crawford "understood the treatment plan for her breast cancer" and that this showed an ability to understand information, and to concentrate.  There is no evidence as to the depth of Crawford's understanding.  Record at 18.  Even worse was his reliance upon the fact that Crawford "gave informed consent" to cancer treatment, and the fact that she was able to retain counsel.  Record at 18-19.  By this logic, no claimant would be found psychiatrically disabled unless she acted through a court-appointed guardian.

Nevertheless, the ALJ did cite other, more substantial, evidence.  A few records from the Wedge described Crawford as having an intact immediate memory, although one noted an impaired recent memory.  Record at 1036, 1045.  Crawford was also described as being well-groomed, with appropriate attire.  Record at 136.  On June 16, 2017, she was said to have a congruent affect, normal speech and perceptions, unremarkable thought content and normal thought processes and psychomotor behavior.  Record at 1035-6.  She was also called "calm and pleasant," though she reported depression.  Record at 1036.  On another occasion, she was described as "cooperative and engaged."  Record at 1081.  There are no treatment notes describing disorientation, psychosis, or inappropriate behavior.  These notes could legitimately be found by the ALJ to be inconsistent with the extreme findings in the reports submitted by Dr. Alcera and Ms. Krisch.

Further, treatment notes from Penn Medicine consistently called Crawford fully oriented and cooperative, with a normal mood and affect.  Record at 1189, 1221, 1233, 1244.  This also supported the ALJ's determination that Crawford's limitations were no more than moderate in the functional areas identified by the Listings.

Also, Crawford's history of mental health treatment is not extensive.  It does not appear that she was ever hospitalized for mental illness, nor was she referred to an outpatient partial hospitalization program.  As the ALJ noted, Crawford was very erratic in her treatment.  She was discharged from the Wedge no fewer than three times in three years for failing to appear at scheduled appointments.  Record at 1013 (2015), 1053 (October, 2017), 1090 (April 19, 2018).  Therefore, she had much less actual treatment than the 2015-2018 dates of treatment set forth on Dr. Alcera's report would imply.

On May 31, 2017, moreover, Crawford told her therapist that mental health treatment was originally court-ordered upon a DHS recommendation, after her children were removed from her custody for two months in 2016 because her home was found to be "too cluttered or unsafe." Record at 1055.  Crawford said that she remained in therapy because she still had an open DHS case, and that she would leave when the case was closed.  Id.

Undeniably, having her children removed because her home was "too cluttered or unsafe" is in itself evidence of some sort of instability.  It should also be recognized that Crawford's therapist felt that her depression and anxiety were factors in her chronic attendance problems.  Record at 1057.  Nevertheless, the evidence could reasonably suggest that Crawford did not personally feel a great need for mental health treatment.

Where the ALJ's decision is adequately supported by substantial evidence, a court may not disturb his reasoning simply by looking at other evidence.  Further, the ALJ in this case did not ignore Crawford's mental impairments.  He found her anxiety and depression to be severe, and limited her to work requiring only simple, routine and repetitive tasks, with few workplace changes, and no contact with the general public.  Record at 19.  He also excluded production rate or assembly line work.  Id.  As a whole, therefore, the ALJ's treatment of the evidence regarding Crawford's mental impairments was adequate.

V.    <u>Conclusion</u>

In accordance with the above discussion, I conclude that the decision of the Commissioner should be reversed in part, and the matter remanded to the Agency for a determination as to whether work existed which the claimant could have performed in the relevant period requiring only occasional reaching in any direction with her left arm.

BY THE COURT:

/s/ Jacob P. Hart

_____

JACOB P. HART
UNITED STATES MAGISTRATE JUDGE